## Commonwealth ex rel. Herman, Appellant, *v.* Claudy

Argued April 13, 1954. Before HIRT, ROSS, GUN-THER, WRIGHT, WOODSIDE and ERVIN, JJ. (RHODES, P. J., absent).

*Marjorie Hanson Matson,* for appellant.

*John F. Roney,* Assistant District Attorney, with him *Wray G. Zelt,* District Attorney, for appellee.

OPINION BY WOODSIDE, J., August 30, 1954:

The only question presented to us by the appellant in this appeal from the refusal of the lower court to grant a writ of habeas corpus is "Under the circum-

stances of this case, did the failure of the Washington County Court to appoint counsel for Defendant deprive him of due process of Law?"

The matter was before the lower court on petition and answer. The court's own record of the sentence and what transpired there was also properly before it, *Com. ex rel. Comer v. Claudy*, 174 Pa. Superior Ct. 494, 496, 102 A. 2d 227 (1954). Since the lower court dismissed the petition without a hearing, the facts alleged in the petition, if properly and sufficiently averred and unless contradicted by the record itself, must be accepted as true. The conclusions contained in it need not be.

It appears that on October 26, 1945 the relator pleaded guilty before President Judge GIBSON in Washington County to 8 offenses of burglary, 12 of larceny, 8 of forgery, and 2 of false pretense, all alleged to have been committed between March 21, 1945 and August 25, 1945. He was sentenced to $2\frac{1}{2}$ years to 5 years on each of the offenses, some to run consecutively, but most concurrently. His total sentence was $17\frac{1}{2}$ years to 35 years in the Western Penitentiary to be computed from September 8, 1945 the day of his arrest.

The law to be applied in this case was set forth by this court in *Com. ex rel. Reggie v. Burke*, 170 Pa. Superior Ct. 647, 649, 90 A. 2d 385 (1952) as follows:

"The failure to provide counsel when none is requested or to advise a defendant that counsel will be assigned him upon request does not constitute, ipso facto, a denial of due process or other violation of a defendant's constitutional rights in non-capital cases . . . (Cases cited)

"Both federal and state courts have said that, to invalidate a plea of guilty in non-capital cases by reason of denial of due process arising from failure to provide a prisoner with counsel by the courts of this

Commonwealth, the prisoner must establish that for want of benefit of counsel an ingredient of unfairness actively operated in the process that resulted in his confinement. (Cases cited) In the absence of such ingredient of unfairness, the question of waiver of the right to counsel, understandingly made, does not require consideration."

See also *Com. ex rel. Popovich v. Claudy*, 170 Pa. Superior Ct. 482, 87 A. 2d 489 (1952); *Com. ex rel. Johnson v. Burke*, 174 Pa. Superior Ct. 119, 100 A. 2d 125 (1953).

Whether there is "an ingredient of unfairness" is a determination to be made on the basis of the facts of the individual case; *Uveges v. Pennsylvania*, 335 U. S. 437, 69 S. Ct. 184, 93 L. Ed. 127 (1948).

In the recent case of *Com. ex rel. Swieczkowski v. Burke*, 173 Pa. Superior Ct. 363, 366, 98 A. 2d 229 (1953) this court said:

"Youth, lack of education, inexperience with the intricacies of criminal procedure, improper conduct on the part of the court or prosecuting officials and the complicated nature of the offense charged may, in some combination, constitute the 'ingredient of unfairness' which renders the absence of counsel at sentencing a denial of due process. Uveges v. Pennsylvania, 335 U. S. 437, 441, 69 S. Ct. 184, 93 L. Ed. 127."

Two years prior to the sentence which is the subject of the present inquiry, the defendant had been charged with burglary, larceny, and forgery, for which offenses he was sentenced to six to twelve months in the Washington County Jail. After being paroled on this offense he violated his parole by leaving his employment and avoiding the local officials so that his whereabouts were unknown.

Appellant was arrested by the State Police in September, 1945, and held for questioning in connection

with a series of burglaries and larcenies. Relator alleges that this questioning extended off and on over a period of 72 hours, during which time he was held incommunicado, part of the time in the Women's Quarters of the County Jail. He also alleges that at one stage of the questioning an officer grabbed him by the neck and threatened to choke him if he did not confess.

The Criminal Court records disclose that on September 8, 1945, defendant signed a form entitled "Waiver of Grand Jury and Entry of Plea", by which he agreed to enter a plea to burglary, forgery, and larceny of auto. On the same day defendant was taken before a Justice of the Peace, where he was held for court on 27 separate offenses.

From September 8, 1945 to October 26, 1945, when defendant was brought before the Court for sentence, defendant was held in the Washington County Jail.

Relator now denies his guilt except as to one charge of forgery.

A record was made of the hearing. It shows that as the defendant stood at the bar, without counsel, the assistant district attorney advised the court that defendant had entered a plea of guilty to various indictments and counts which he then referred to in order and described in some detail.

He related the theft of three motor vehicles, a burglary of St. Patrick's Church in Canonsburg where the defendant entered the rear window and stole $20 from the poor boxes; three burglaries of Carmel's Beer Place in Washington, Pa., where on one occasion he was seen, chased, and identified; two burglaries of the Washington Theatre, and burglaries of restaurants at Frederickstown and West Brownsville. He told how the defendant stole the motor vehicles, referred to above, to get away after committing some of the above

crimes and how he stole five checks from one of them; how he forged and cashed one of these checks, and how he forged his wife's name to seven other checks.

It was also called to the court's attention that the defendant had been before the court in 1943 on charges of burglary, larceny, and forgery on which he was given six to twelve months in jail. His former and his present residence, and his marital status were given to the court.

He was asked his age. He was asked, "Is there anything you wished to state to the Court about your case?" and replied, "I throw myself at the mercy of the court, your Honor."

The court asked him where he had been working since he was paroled in the former case and, after the court referred to his running away from his work while he was on parole, asked him, "Will you explain to me why the court should extend any leniency to you?" The court asked him whether he had committed numerous burglaries and forgeries and various felonies and he replied, "Yes, sir." The court inquired for the day of commitment, and sentenced with care. The court's discussion of the case with the defendant is recorded over three pages of the printed record. It shows that the defendant was not only given opportunity but was encouraged to say anything to the court which he felt would be helpful to his cause. At no time did the defendant suggest that he desired counsel.

We recite these matters in some detail to show that the court made an effort to get at the facts and to give the defendant an opportunity to say whatever could be said on his behalf.

A careful reading of the record will indicate that there was no unfairness on the part of the court, or the district attorney.

The relator was 21 years of age. This, of course, is young, but a large percentage of those who appear in criminal courts are either in their late teens or early twenties. There are probably as many burglaries committed by persons of this boy's age, or younger, as there are by persons older than he.

He had only a grammar school education, but he had been in trouble for larceny, burglary, and forgery before. He had contact with the police, the district attorney, the court, and the probation office prior to his arrest for the offenses in question here. Furthermore, he was in jail first, for a period of some months on the previous sentence, and a second time for about seven weeks before appearing for sentence in these cases. It is not in high school and college that one learns the intricacies of criminal procedure, nor the use of legal technicalities, nor the ways of the officials who are charged with law enforcement. These things are more frequently learned in the jailhouse where there is a concentration of experience on such matters and where there is much time to recall and exchange experiences which have been so important to all present. The relator was not ignorant of the ways of the law and the courts when he was sentenced.

Technicalities, which might have been raised at the time of sentence as to the indictments and as to whether some of the cases should not have been docketed in the Court of Oyer and Terminer rather than Quarter Sessions, are not important to us in this case.

It is not our function to review the term of the sentences imposed by the courts, nor to pass upon their severity or their leniency. The relator got into serious trouble; was paroled; then violated the trust thus placed in him; then committed a series of various types of serious crimes directed against the church and his family, as well as strangers. For such conduct he

should expect that the public, speaking through the sentencing judge, would be likely to express some righteous indignation in the form of a severe sentence. But the prisoner here has now served 9 years, a long time for crimes involving no violence. The Pardon Board has never been asked to examine his case. Whether or not it is because the prisoner fears his prison record or present conduct would not merit consideration, we do not know. If the case is presented to that Board it might find that his record, attitude, and conduct in the penitentiary confirm the sentencing judge's evaluation of him, and that he is not even now a proper person to have his freedom. On the other hand, it might conclude that he has served sufficient time, and is now entitled to another chance.

Under no circumstances should writs of habeas corpus be granted as substitutes for commutation of sentences.

The Constitution of this Commonwealth gives the responsibility in such matters to the Pardon Board, and we have no desire nor right to usurp it.

Order dismissing writ affirmed.